IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONTEZ ARTIS, No. B-84281, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 20 C 7770 |
| KAREN RABIDEAU, WILLIAM BROWN, and TERRELL PORK, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In early December 2017, Montez Artis, who was incarcerated at Stateville Correctional Center, was put into a cell with Darryl Sutton. There is some evidence that Sutton had threatened or harmed one or more previous cellmates. Artis says that Sutton repeatedly threatened him as well, telling Artis that he would "f--- him up" and would kill him. Artis alleges that he reported this several times in writing to Karen Rabideau, a prison administrator responsible for cell assignments, and face-to-face to Lieutenant William Brown and Sergeant Terrell Pork, both of whom worked on the correctional staff in the cellblock where Artis was housed. Artis says that Rabideau ignored his complaints and that Brown and Pork were dismissive and likewise did nothing. On April 13, 2018, Artis says, Sutton attacked him in their cell, and Artis suffered injuries. He has sued Rabideau, Brown, and Pork, claiming a violation of his Eighth Amendment rights. Artis has asserted a separate claim against Rabideau for retaliation, alleging that her assignment of him to a cell with Sutton and failure to move

him were done in retaliation for earlier grievances and/or lawsuits he had filed. The defendants have moved for summary judgment.

1.     **Failure to protect claim**

Artis's failure-to-protect claim cannot be resolved without a trial. There are genuine factual disputes on key issues that can be resolved only by hearing evidence and making credibility judgments.

The Court begins by outlining what Artis must prove to prevail on his claim. The Eighth Amendment imposes a duty on prison officials to protect imprisoned persons from violence at the hands of other imprisoned persons. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prevail on his failure-to-protect claim against a particular defendant, Artis must establish that that he was exposed to an objectively serious risk of harm and that the defendant "had actual knowledge of that risk and responded with deliberate indifference." *Zirko v. Rabideau*, No. 21-1389, 2022 WL 16955470, at *1 (7th Cir. Nov. 16, 2022).

A beating at the hands of a fellow prisoner plainly constitutes serious harm. *See Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (cited with approval in *Gevas v. McLaughlin*, 795 F.3d 475, 480 (7th Cir. 2015)). Thus a reasonable factfinder could find that Artis meets the first requirement for his claim.

To establish a defendant's deliberate indifference, Artis must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837). But a plaintiff "need not present direct evidence of the official's state of mind: 'Whether a prison official had the requisite

knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .'" *Gevas*, 798 F.3d at 480 (citing *Farmer*, 511 U.S. at 842).

If a prisoner's complaint about a threat from a fellow prisoner lacks context by, for example, failing to describe "surrounding circumstances" that "render plausible" the threats to his safety, the complaint "is insufficient to allow an inference that a substantial risk of harm existed and that [the defendant] in fact recognized that risk." *LaBrec v. Walker*, 948 F.3d 836, 846 (7th Cir. 2020); *see also Gevas*, 795 F.3d at 480-81 ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger."). But "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas*, 795 F.3d at 481.

Artis's claim falls into the latter category. He has testified that he told Rabideau repeatedly in writing, and Brown and Pork at least once each face-to-face, that he had been threatened with death by his cellmate Sutton, and that he asked to be moved out of the cell.[1] And as indicated, there is evidence that Sutton had previously committed violence or made violent threats against at least one other cellmate. A reasonable jury

---

[1] Artis also offers evidence that his girlfriend contacted Rabideau directly to advise her of the threats by Sutton against his life and that Rabideau replied that According to the affidavit, Rabideau replied that "she's not going to make any more accommodations for Mr. Artis." *See* Pl.'s Resp. to Defs.' Mot. for Summ. J, Ex. C (dkt. no. 74, pp. 128-29 of 159). That might not be enough by itself to prevent summary judgment or to sustain Artis's claim, but with other evidence it assists him in establishing Rabideau's knowledge of the threats and her knowing decision not to act.

could find this evidence sufficient to permit a reasonable jury to draw "an inference that a substantial risk of harm existed and that [the defendants] in fact recognized that risk." *LaBrec*, 948 F.3d at 846. And the defendants' inaction would permit a reasonable jury to find that they were deliberately indifferent to the risk to Artis's safety from Sutton.

In their motion, defendants do not contend that they were unaware of Artis's pre-assault complaints about Sutton's threats or his requests to be moved. Rather, their contention is that they were not aware of "a specific and <u>imminent</u> risk of harm" to Artis "that was so substantial that a jury could find [they] recklessly disregarded [his] safety." Defs.' Mem. in Support of Mot. for Summ. J. at 6 (emphasis in original). In this regard, defendants note that Sutton was not previously physically aggressive toward Artis and that he never mentioned any weapons, and they also point to the fact that Artis admits fighting back when Sutton attacked him. *See id.* These arguments do not carry the day. On the first point, there is no "one free attack" rule, and defendants cite no case that requires a weapon to be brandished or threatened before deliberate indifference liability may attach. And the second point made by defendants is of no consequence. Artis's testimony about the fight, which is uncontradicted in the record and which the Court must take at true for present purposes, is that he was attacked by Sutton, not the other way around. Defendants cite no case suggesting that the fact that an attacked prisoner attempts to defend himself absolves prison officials from liability for the attack.

Perhaps the best Seventh Circuit case for defendants is *Zirko* (which is, as of the date of the present decision, still unpublished), but Artis's claim survives a careful reading of that case. In *Zirko*, the court concluded that a single statement by the plaintiff to a correctional officer that his cellmate "had threatened to beat him within an

4

inch of his life," *Zirko*, 2022 WL 16955470, at *1, was not enough to establish that the officer "had actual knowledge of a specific threat again [plaintiff] that was repeated, imminent, or plausible." *Id.* at *2. In addition to the fact that the plaintiff had advised the officer of a threat from the cellmate only once, the court noted that he had not "provided context for [his] complaint[]," for example, something that would have "provided essential context" for making the reported threat believable. *Id.* The court also noted that there was no evidence that the officer was aware that the cellmate had repeated his threats to the plaintiff. It stated: "Had [plaintiff] reported that more threats followed the first, or had he even repeated his concern on more than one occasion, that could have bolstered the credibility of his initial claim." *Id.*

Though Artis does not state in the cited portions of his deposition that he communicated to any of the defendants a purported reason for Sutton's threats, that's where the similarity to *Zirko* ends, at least for summary judgment purposes. Artis has testified that he received, and repeatedly reported, multiple threats from Sutton. That satisfies even *Zirko*, and it plainly satisfies *Gevas*, which (as previously discussed) says that "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas*, 798 F.3d at 481. And as indicated, there is also at least some evidence in the record that Sutton had a prior history of violence vis-à-vis cellmates. Evidence is lacking in the present record that Artis ever explained why Sutton was threatening him, but it's hard to see that as fatal to his claim: it assumes that assaulting prisoner would have to have, *and* communicate to his prospective victim in advance, some reason for wanting to

5

harm him.  Imposing this as an ironclad requirement for a failure-to-protect would seem contrary to common sense.

The Court also overrules defendants' apparent contention that Artis's failure to ask to be moved to protective custody bars his claim.  That's likely a factor that a factfinder could consider and weigh, but it's not a threshold requirement for a failure to protect claim, and no Seventh Circuit case so holds.  Though the court said in *Gevas* that safety concerns that are "contradicted by the prisoner himself" are insufficient to establish that a defendant was deliberately indifferent to an excessive risk of harm, *Gevas*, 798 F.3d at 481, the case cited by the court for that proposition involved a situation where the plaintiff, after initially expressing fear of harm from his cellmate, "subsequently indicated to [a] guard that he had no concern." *Id.* (citing *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004)).  That's certainly not the situation here.[2]

In sum, Artis has offered evidence sufficient to permit a reasonable jury to find that each of the defendants was sufficiently aware of threats by Sutton to do him serious harm and yet chose to do nothing.  This is sufficient to permit Artis's failure-to-protect claim to go to trial.

**2.    Retaliation claim**

In his second claim, made against Rabideau only, Artis contends that Rabideau assigned him to a cell with Sutton, and/or refused to move him, in retaliation for his

---

[2] When asked why he did not request to be put in protective custody, Artis stated that it would have resulted in being labeled as a "snitch"—and thus in more danger going forward—and also noted that protective custody amounts to solitary confinement: lockdown for 23 hours per day with no television, radio, or property.  As indicated in the body of this opinion, defendants have cited no Seventh Circuit case that suggests that failure to seek protective custody bars a failure to protect claim.

submission of grievances and filing of lawsuits.

In seeking summary judgment, Rabideau contends that Artis has no evidence that she was aware of any previous grievances or lawsuits. In response, Artis produced e-mails dated March 14, 2018, between Rabideau and Phyllis Baker, regarding "Library worker Artis #B84281." Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. B (dkt. no. 74 at p. 126 of 159). Baker reported that Artis had resigned from his library assignment the previous day, and Rabideau responded: "Okay, got him! I'm sure a lawsuit is coming. Ugh." *Id.* Artis also produced an e-mail from Rabideau to Warden Lamb dated April 5, 2018, stating "[Artis] was a law clerk but quit the job due to all the mold back there and his breathing being affected. I heard through word on the street that he's filing a lawsuit about it." *Id.*, Ex. B2 (dkt. no. 74 at p. 127 of 159).

These e-mails are certainly sufficient to permit a reasonable fact finder to determine that Rabideau became aware of a grievance or lawsuit or potential grievance or lawsuit by Artis as of March 14, 2018. It's less clear that that there was anything Rabideau did, or failed to do, after that date with respect to his cell assignment that would permit an inference of retaliation. But Rabideau doesn't make that point in her motion for summary judgment. Rather, she simply argues that there is no evidence she was aware of any grievances or lawsuits. That's not a viable argument based on the e-mails just discussed. Thus the retaliation claim remains for trial as well.

## Conclusion

For the reasons stated above, the Court denies defendants' motion for summary judgment [dkt. no. 64]. The case is set for a telephonic status hearing on March 27, 2023 at 8:45 a.m. to set a trial date and discuss the possibility of settlement.

7

Defendants' counsel is directed to make arrangements for plaintiff to participate in the status hearing by telephone.

Date: March 6, 2023

                                                                _____
                                                                 MATTHEW F. KENNELLY
                                                                 United States District Judge